1
2
3
4
5
6

UNITED STATES DISTRICT COURT

7

DISTRICT OF NEVADA

8

* * *

9

UNITED STATES OF AMERICA,

Case No. 3:20-CR-0004-LRH-CLB

10

Plaintiff,

ORDER

11

v.

12

JOE ELTON MOSLEY,

13

Defendant.

14

15     Defendant Joe Elton Mosley ("Mosley") has filed a motion to suppress (ECF No. 37) all

16   evidence arising out of a stop and frisk occurring in January of 2020. The Government responded

17   (ECF No. 39), and Mosley replied (ECF No. 41). For the reasons contained in this Order, the Court

18   will deny the motion.

19                                    **I. Background**

20     On January 29, 2020, Mosley was shopping at a Walmart with his family. ECF No. 37 at

21   1. Before Mosley walked into the Walmart, an individual called 911 because he observed Mosley

22   wearing a bandolier across his chest, which appeared to hold shotgun shells. *Id.* at 2. Officers from

23   Sparks Police Department arrived on the scene and met with Walmart security personnel. *Id.*

24   Together, they tracked Mosley's movements throughout the Walmart via surveillance cameras. *Id.*

25     Mosley wore a large, bulky down coat, and Officer Derek Imus claims to have seen the

26   outline of a gun through the jacket on Mosley's back. ECF No. 37-3. In addition, Mosley appeared

27   to wear a body armor vest. ECF No. 39-2. Still, some officers remarked they could not see a visible

28

gun on Mosley's person. ECF No 37 at 2. While in the Walmart, Mosley did not act or do anything suspicious. *Id.*

Once out of the Walmart, between six or seven officers approached Mosley with their weapons drawn. *Id.* at 3. The officers ordered Mosley to put his hands up and place them on his head, and once placed in handcuffs, he was brought over to a police vehicle. *Id.* Officers performed a *Terry* frisk and found and removed three firearms from Mosley's person: a 9mm semi-automatic pistol; a revolver; and a 12-guage shotgun on his back. ECF No. 39 at 3. After performing a records check, officers determined that Mosley did not have a concealed carry permit and had a 2004 felony conviction. *Id.* Based on this information, Mosley was placed under arrest. *Id.* Mosley now seeks to suppress the evidence found from the *Terry* stop and pat down.

## II. Legal Standard

The Fourth Amendment to the Constitution of the United States provides that: "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . ." U.S. CONST. amend. IV. Any evidence resulting from an unconstitutional search or seizure cannot be admitted, and therefore must be suppressed. *See Wong Sun v. United States*, 371 U.S. 471, 485 (1963). Importantly, "there are two categories of police seizures." *Allen v. City of Portland*, 73 P.3d 232, 235 (9th Cir. 1995). First, there is a *Terry* stop, which must be supported by an officer's "reasonable suspicion" that criminal activity "may be afoot." *U.S. v. Arvizu*, 534 U.S. 266, 273 (2002); *see also Terry v. Ohio*, 392 U.S. 1 (1968). The second is an arrest, and when conducted without a warrant, must be supported by probable cause. *Allen*, 73 F.3d at 236 (citing *Henry v. United States*, 361 U.S. 98, 1002 (1959)). Probable cause is more exacting than reasonable suspicion, and it must be based on information that would "warrant a prudent person in believing that the accused had committed or was committing an offense." *Id.* at 237.

The Ninth Circuit does not use a bright-line rule to determine when a *Terry* stop becomes an arrest, and instead, evaluates the totality of the circumstances. *See Washington v. Lambert*, 98 F.3d 1181, 1185 (9th Cir. 1996) ("…we decide whether the police action constitutes a Terry stop or an arrest by evaluating not only how intrusive the stop was, but also whether the methods used

were reasonable given the specific circumstances."); *Allen v. City of Los Angeles*, 66 F.3d 1052, 1057 (9th Cir. 1995) ("The relevant inquiry is always one of reasonableness under the circumstances.") (quoting *United States v. Sanders*, 994 F.2d 200, 206 (5th Cir. 1993)). Importantly, some intrusive stops may be appropriate if reasonable methods were used given the circumstances, e.g., where the officers have reasonable suspicion that the defendant may pose a serious threat to their safety. *Washington*, 98 F.3d at 1185.

### III. Discussion

Mosley argues any evidence stemming from the *Terry* stop should be suppressed because: (1) the officers did not have reasonable suspicion to believe that Mosley had or was committing a crime; and (2) the intrusiveness of the stop amounted to an arrest requiring probable cause. Each of these arguments are addressed in turn.

### A. Reasonable Suspicion

Mosley first contends that, prior to his seizure, law enforcement had no reasonable suspicion that he had committed or was committing a crime. ECF No. 37 at 6. More specifically, Mosley argues that violating Walmart's store policy (by carrying a weapon) did not give officers sufficient reasonable suspicion that a crime was taking place, as both open and concealed carry are legal in Nevada. *Id.*

First, regarding the Walmart policy, the facts indicate the officers were not called to investigate a store policy violation. Rather, a concerned citizen watched a man walk into a Walmart with shotgun shells strapped around his chest. While true a store policy violation alone does not give officers reasonable suspicion to conduct a *Terry* stop and pat down, that does not prevent officers from responding to a 911 call made in good faith.

Related to carrying a gun in the Walmart, Mosley argues that there was no reasonable suspicion to perform the *Terry* stop and pat down as Nevada law permits open and concealed carry of a firearm in certain circumstances. NRS §§ 202.3652-202.369. However, Ninth Circuit precedent contradicts Mosley's general assertion. In *Foster v. City of Indio*, 908 F.3d 1204 (9th Cir. 2018), the court held "[w]here state law makes it generally unlawful to carry a concealed weapon without a permit, a tip that a person is carrying a concealed firearm raises a reasonable

3

suspicion of potential criminal activity . . . even if the tip does not state that the person is carrying the firearm illegally or is about to commit a crime." *Id.* at 1215. So, in Nevada, where the concealed carry statute requires an individual to have a permit, a tip that a person may be carrying a firearm alone may be enough for officers to have reasonable suspicion that a crime may be taking place. *See* NRS § 202.3657.

In addition, aside from this instructive legal precedent, the language of the concealed carry statute in Nevada is not without its limits. Nevada law defines a concealed firearm as "a loaded or unloaded *handgun* which is carried upon a person in such a manner as not to be discernible by ordinary observation." NRS § 202.3653 (emphasis added). Mosley carried a 12-guage shotgun on his back—not a handgun. ECF No. 39 at 3. While some officers remarked they were not sure if the bulge on Mosley's back was a gun, Officer Derek Imus's report indicates he saw an outline of a gun. ECF No. 37-3. The Ninth Circuit has previously "given significant weight to an officer's observation of a visible bulge in an individual's clothing that could indicate the presence of a weapon." *United States v. Flatter*, 456 F.3d 1154, 1157–58 (9th Cir. 2006) (citations omitted). Still, Mosley points out that if officers could see the outline of a gun on his person, then the gun was not technically "concealed," but rather, being openly carried which does not require a permit. ECF No. 41 at 2.

The text of the Nevada concealed carry statute cuts against this argument. Nevada law provides that "'[c]oncealed weapon' means a weapon described in this section that is carried upon a person in such a manner as not discernible by ordinary observation." NRS § 202.3653. Clearly, a gun which is hidden under a bulky jacket, does not lend itself to being discernible by ordinary observation. *See United States v. Bontemps*, 977 F.3d 909, 915 (9th Cir. 2020) ("A concealed weapon is necessarily obscured by something, typically clothing. A rule that always required more than a suggestive bulge, or that required the concealed weapon to be revealed, would run counter to *Terry*'s fact-based standard and pose obvious safety concerns.") (citations omitted).

Accordingly, because officers were responding to a 911 call of Mosley walking into a Walmart potentially armed, and at least one officer saw the outline of a shotgun on Mosley's back,

under the totality of the circumstances, the officers had reasonable suspicion to perform a *Terry* stop and pat down.

### B. Intrusiveness of the Stop

Mosley also argues that, even if the officers had reasonable suspicion to conduct a *Terry* stop and pat down, their actions during the seizure constituted a de facto arrest requiring probable cause. When Mosley left Walmart, about six to seven officers drew their weapons on Mosley, and subsequently placed him in handcuffs. Certainly, these actions were intrusive, but considering the circumstances, they did not constitute an arrest requiring probable cause.

Generally, "[a] *Terry* stop involves no more than a brief stop, interrogation, and, under proper circumstances, a brief check for weapons." *United States v. Robertson*, 833 F.2d 777, 780 (9th Cir. 1987). However, intrusive police conduct during a *Terry* stop may be warranted if there exists a potential threat to an investigating officers' safety. *Washington*, 98 F.3d at 1186. For example, intrusiveness is appropriate if the suspect is uncooperative, the suspect is acting as if there is a reasonable possibility of flight, or if the police have information that the suspect is currently armed. *Id.* at 1189.

Here, the intrusiveness of the stop was justified when analyzed in the context of a *Terry* stop. As discussed above, the police had information which suggested Mosley was armed: he was wearing a bandolier with shotgun shells, he had a bullet proof vest, and at least one officer could make out the shape of a weapon on his back. *See Allen v. City of Los Angeles*, 66 F.3d 1052, 1056–58 (9th Cir. 1995) (an arrest did not arise when defendant was handcuffed on the ground with a gun pointed at his head). Accordingly, because the officers had sufficient information to believe that Mosley was armed while dressed in an unusual manner and present in a popular public department store, the tactics used during the *Terry* stop and pat down did not constitute an arrest requiring probable cause.

The exclusionary rule is used to penalize and prevent police misconduct. *Spano v. New York*, 360 U.S. 315, 320–21 (1959). Even still, as a rule of last resort, and in instances where no police misconduct took place, evidence should not be suppressed. *See Herring v. United States*,

555 U.S. 135, 140 (2009) ("[T]he rule's costly toll upon truth-seeking and law enforcement objectives presents a high obstacle for those urging its application.")

Here, because the officers' actions did not violate the Fourth Amendment, the suppression of the evidence is not required.

### IV. Conclusion

IT IS THEREFORE ORDERED that Defendant's motion to suppress (ECF No. 37) is **DENIED.**

IT IS SO ORDERED.

DATED this 16th day of November, 2020.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE